IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHNNY FUSELIER, INDIVIDUALLY AND ON
BEHALF OF A CLASS OF ALL OTHERS
SIMILARLY SITUATED                                                    PLAINTIFF

V.                                                                NO. 1:25-cv-268-HSO-BWR

JOHN S. RISCASSI, IN HIS OFFICIAL CAPACITY
AS THE CHIEF OPERATING OFFICER OF THE
ARMED FORCES RETIREMENT HOME                                           DEFENDANT

---

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

Plaintiff Johnny Fuselier's primary argument for why Defendant's Motion for Summary

Judgment should be denied is his contention that the Motion is "premature." Rule 56, however,

specifically authorizes motions for summary judgment to be filed "at any time" before or during the

discovery period.[1] Moreover, the undisputed evidence submitted by the parties warrants a finding

that the Armed Forces Retirement Home's ("AFRH") restriction on clothing or signs in support of

or against current political candidates does not violate the First Amendment. Defendant is therefore

entitled to summary judgment, and Plaintiff's Complaint should be dismissed with prejudice.

## ARGUMENT

### I.      Defendant's Motion is not premature.

Rule 56 provides that "a party may file a motion for summary judgment at any time until 30

days after the close of all discovery." Fed. R. Civ. P. 56(b). Defendant's Motion in this case was filed

on January 22, 2026, nearly five months after Fuselier filed his Complaint on August 26, 2025, and

---

[1] Fed. R. Civ. P. 56(b).

long before the close of discovery. The Motion was therefore filed in compliance with the timing requirements of Rule 56.

Fuselier's argues, however, that the Motion is "premature" because it was filed before he has had an opportunity to complete class certification-related discovery. Plaintiff's Response [20] at 2-4. He further argues that Rule 56 "mandates" that summary judgment may "only" be entered after adequate time for discovery has been provided. *Id.* at 2. But Rule 56 does not include such a "mandate." It authorizes the filing of summary judgment motions "at any time," even in the early stages of litigation. Fed. R. Civ. P. 56(b). There is no requirement for a defendant to wait until discovery has closed.

Fuselier contends the Fifth Circuit "generally favors" resolving class certification issues before ruling on summary judgment motions, but the case he cites supporting his contention, "*Rodriguez v. It's Just Lunch, Int'l*," is not a Fifth Circuit case, nor is the citation he provides "2013 WL 12173926" a citation to a case in this Circuit. What the Fifth Circuit has said, however, is that, in situations such as this, when the defendant seeks summary judgment before a ruling on class certification, a plaintiff seeking to hold in abeyance the ruling on summary judgment until a class certification issue is resolved should file a motion under Fed. R. Civ. P. 56(d). *See Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1441-2 (5th Cir. 1993) (addressing former Rule 56(f), which was recodified as subsection (d)). Motions under that rule require the non-movant to "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016) (internal quotations omitted). Fuselier makes no attempt whatsoever to provide this information, and his "vague assertions that [class] discovery will produce needed, but unspecified, facts" are insufficient to defeat

2

summary judgment. *Id.* His request for additional discovery, to the extent he even makes one, should therefore be denied.

## II.     Defendant is entitled to summary judgement.

As explained more fully in Defendant's Response [13] to Plaintiff's Motion for Preliminary Injunction, the common areas are of the AFRH-Gulfport are "limited public fora," and AFRH's enforcement of its policy concerning certain political clothing and signs in those areas is reasonable and allowed under the First Amendment.

Fuselier argues, however, that the common areas are not limited public fora, but are instead "designated public fora" subject to strict scrutiny, meaning restrictions on speech in those areas must be narrowly tailored to serve a compelling state interest. The evidence does not support his argument.

Fusilier relies primarily on *Hays Cnty. Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992). The Court in *Supple* held that the "outdoor grounds" of the university at issue in that case were designated public fora. *Id.* at 116. In reaching this conclusion, the Court first noted that the Supreme Court has described a public university campus as "possess[ing] many characteristics of a public forum." *Id.* (citing *Widmar v. Vincent,* 454 U.S. 263, 267 n. 5 (1981)). It then noted the University's own written policy stated that: "Any group or person, whether or not a student or employee, and whether or not invited by a registered student, faculty, or staff organization, may assemble and engage in free speech activities on the grounds of the campus." *Id.* Its policies further allowed public distribution of "petitions, handbills, or pieces of literature" "*outdoors, on grounds owned or controlled by the University,*" with the only restriction being that distributed material not be "obscene, vulgar, . . . libelous, or . . . contain impermissible solicitation." *Id.* Additionally, the Court noted that the University authorized "widespread distribution" throughout its campus of its own newspaper containing "editorials, news stories, and advertisements," much like the content the plaintiffs were

3

prohibited from distributing. *Id.* Given these facts, the Court concluded the University "deliberately fosters an environment in which students may freely distribute newspapers, pamphlets, and other literature concerning public affairs" in its outdoor spaces, and those areas were designated public fora. *Id.*

Conversely here, AFRH-Gulfport has no such policies opening its common areas for the free "widespread distribution" of signs or clothing supporting or opposing a political candidate. *Id.* at 116. Nor is there any evidence that AFRH-Gulfport, like the university at issue in *Supple*, engages in the very conduct it bars its residents from conducting. *Supple* is thus inapposite.

Furthermore, as the Fifth Circuit has recognized, a designated public forum is created "only by intentionally opening a nontraditional forum for public discourse." *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 347 (5th Cir. 2001) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 805 (1985)). Fuselier has produced no evidence that the AFRH-Gulfport has intentionally opened its common areas for unfettered public discourse. On the contrary, he repeatedly alleges and admits the facility has consistently rejected his numerous attempts to wear clothing or apparel supporting a political candidate. *See generally* Complaint [1] at 5-7. These facts, which are admitted by Fuselier, support a finding that the AFRH has not intentionally opened its common areas for such political displays; it has expressly and consistently closed them to such activity. Because of this, its common areas are not designated public fora; they are limited public fora.

Fuselier argues that Defendant's contention on this point is undermined by AFRH-Gulfport's stated policy of not interfering with the First Amendment rights of its residents. But this policy statement does not define the scope of those rights. A statement that residents are entitled to their rights is not a definition of what those rights are. And, explained above, the policies Fuselier challenges in this lawsuit are not prohibited by the First Amendment.

Fuselier further argues that Defendant must "identify an 'actual problem'" in need of solving to justify its ban on clothing or apparel supporting a political candidate,[2] but the Supreme Court has only required such a showing in cases involving strict scrutiny, which this case does not. *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011) (citing *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 822-823 (2000)).

Fuselier cites *Minnesota Voters All. v. Mansky*, 585 U.S. 1 (2018), which he says "unequivocally foreclosed" restrictions on expressive apparel. But this is not what *Mansky* held. Although the Court in *Mansky* noted that expressive apparel may be "nondisruptive . . . *in more mundane settings*," it held that the State of Minnesota could prohibit certain apparel in public polling places "because of the message it conveys, so that voters may focus on the important decisions immediately at hand." *Id.* at 15 (emphasis added). Thus, Fuselier is simply wrong when he says *Mansky* "unequivocally foreclosed" all restrictions on expressive apparel. The Court specifically held that such restrictions are allowed in certain situations such as the one presented here where the setting is not so mundane.

Furthermore, although the Court in *Mansky* ultimately held that Minnesota's probation was unconstitutionally vague because it was not limited to campaign apparel, the restriction at issue here is not so overbroad. As Fuselier concedes, AFRH-Gulfport issued multiple announcements explaining that its prohibition was limited to "clothing or signs **in support of or against a CURRENT political candidate**." Plaintiff's Complaint [1] at 4 (¶ 22) (quoting https://www.afrh.gov/sites/default/files/TPOW-06-19-23-thru-06-25-23.pdf; emphasis added); *id.* at 4 n.3 (citing https://www.afrh.gov/sites/default/files/TPOW-06-26-23-thru-07-02-23.pdf, which provides that "clothing or signs in support of or against a CURRENT political candidate is inappropriate and not allowed at AFRH-G."); Exhibit 1 to Plaintiff's Complaint [1-1] ("Clothing or

---

[2] Plaintiff's Response [20] at 6.

signs that is for or against any CURRENT candidate is not allowed."). This limiting language is virtually identical to language at issue in *Ostrewich v. Tatum*, which the Fifth Circuit held to be constitutionally acceptable post-*Mansky*. 72 F.4th 94 (5th Cir. 2023). In that case, the plaintiff challenged Texas's law prohibiting the "posting, use, or distribution of political signs or literature" "relating to a candidate, measure, or political party appearing on the ballot" within 100 feet of a polling place. *Id.* at 106. The Fifth Circuit held that this restriction, unlike the overly broad ban in *Mansky*, which "lacked *any* limiting principle," was more limited and is Constitutionally sound. *Id.* at 105-106 (emphasis in original). AFRH-Gulfport's ban is likewise limited to "clothing or signs in support of or against a CURRENT political candidate." It is therefore Constitutionally acceptable even under a post-*Mansky* regime. *Id.*

As a final note, Fuselier repeats an argument he has made multiple times in this case that AFRH-Gulfport's ban is "staggeringly overbroad" because it "reach[es] veterans in the their homes,"[3] but as explained in Defendant's Summary Judgment Memorandum [19], the living quarters of the AFRH-Gulfport are separate from the common areas (such as the cafeteria) where the clothing and sign restrictions are enforced. There are no such restrictions on political clothing or signs in private living quarters, nor has Fuselier alleged that he has been prohibited from wearing certain clothing or posting certain signs in his "home"—*i.e.,* in his private living space. As the policy expressly provides, its restriction is limited to "public spaces." AFRH-Gulfport Resident Guide effective July 18, 2023 [13-1] at 55. Fuselier's attempt to characterize the policy as a restriction on political speech in his "home" is therefore contrary to the facts and should be rejected as such.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment should be granted.

Date:  February 20, 2026

---

[3] Plaintiff's Response [20] at 7.

Respectfully submitted,

J.E. Baxter Kruger
United States Attorney for the
Southern District of Mississippi

*s/ James E. Graves, III*
James E. Graves, III (MSBN 102252)
Jessica Bourne Williams (MSBN 103922)
Assistant United States Attorneys
501 East Court Street, Suite 4.430
Jackson, Mississippi 39201
Telephone: (601) 965-4480
Facsimile: (601) 965-4032
James.Graves@usdoj.gov;
Jessica.Williams3@usdoj.gov