IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JOHNNY FUSELIER,** *individually*                                **PLAINTIFF**
*and on behalf of a class of all others*
*similarly situated*


**v.**                                            **Civil No. 1:25-cv-268-HSO-BWR**


**JOHN S. RISCASSI,** *in his official*
*capacity as the Chief Operating*
*Officer of the Armed Forces*
*Retirement Home*                                          **DEFENDANT**

## ORDER

On May 1, 2026, the Court ordered Counsel for Plaintiff, Aaron Randall Rice, to show cause why he should not be sanctioned for failure to comply with Federal Rule of Civil Procedure 11 by signing and filing a Response [20] in Opposition to Defendant's Motion [18] for Summary Judgment that contained a citation to a fictitious case and quotations that do not appear in a real case. *See* Ord. [25] at 1-2. Mr. Rice filed his Response [27] to the Court's Order [25] on May 15, 2026. *See* Resp. [27]. After reviewing Mr. Rice's Response [27], the Court finds that an admonishment is sufficient, and no sanction will be imposed.

### I. BACKGROUND

This case stems from what has become an all-too-familiar occurrence in court filings: the citation to fictitious legal authority. On February 5, 2026, attorney Aaron Randall Rice filed a Response [20] in Opposition to Defendant's Motion [18] for Summary Judgment. To support his claim that Defendant's Motion [18] was

premature, Mr. Rice cited "*Rodriguez v. It's Just Lunch, Int'l*, 2013 WL 12173926 (5th Cir. 2013)."  Resp. [20] at 4.  That case does not exist.

The Response [20] also contained two quotations to *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1 (2018), which do not appear in that case.  Specifically, Plaintiff's Response [20] claimed that "the Supreme Court has unequivocally foreclosed that argument, holding that the wearing of political slogans is '**nondisruptive by nature**,'" Resp. [20] at 6-7 (quoting *Mansky*, 585 U.S. at 19 (emphasis added)), and that "the Supreme Court has unequivocally held that the wearing of political slogans is '**nondisruptive by nature**,'" *id.* at 8 (quoting *Mansky*, 585 U.S. at 3 (emphasis added)).  But the Supreme Court did not use the phrase "nondisruptive by nature."  Rather, it stated: "[t]o be sure, our decisions have noted the 'nondisruptive' nature of expressive apparel in more mundane settings."  *Mansky*, 585 U.S. at 15.

Based on the foregoing, the Court ordered Mr. Rice to show cause why he should not be sanctioned for failure to comply with Rule 11.  *See* Ord. [25].  It also ordered him to disclose the use of any artificial intelligence ("AI") in conducting legal research and drafting his brief, and to disclose what measures he took to verify the citations, quotations, and propositions in his cited cases.  *See id.* at 4.

According to Mr. Rice's Response [27] to the Court's Order [25], in August 2025, to cut costs, his firm, American Dream Legal, replaced the organization's Westlaw subscription with Fastcase, a research tool with which Mr. Rice was unfamiliar and which "had limited performance and functionality."  Resp. [27] at 2.

2

Due to the limited performance capabilities of Fastcase—and Mr. Rice's admitted lack of familiarity with the software—he turned to Google to locate relevant legal authority and conduct legal research. *See* Resp. [27] at 2; Dkt. [27-3] (Browser History). Mr. Rice hoped to locate relevant authority through web searches and then verify any citations or quotations in Fastcase. *See* Resp. [27] at 3. It was through these web searches that he "obtained the *Rodriguez* citation" but he has been "unable to confirm its source." *Id.* at 4. Although Mr. Rice is "not certain it came from the AI preview, simply because [he is] skeptical of AI responses and do[es] not use interactive AI tools for legal research," he recognizes that because "the citation refers to a nonexistent opinion . . . it may have appeared there, particularly since [he] planned to verify online citations with Fastcase regardless of their specific source." *Id.* Regrettably, while "rushing to meet the deadline" to submit his brief, Mr. Rice did not verify this citation. *Id.* at 5. But to Mr. Rice's credit, he appears to have taken full responsibility for this mistake and has acknowledged that citing fictitious cases poses a "danger . . . to the proper administration of justice." *Id.* at 5.

Turning to errors identified in *Mansky*, they appear to stem from a lack of attention to detail. Mr. Rice has explained that in other briefs he filed—and apparently in the draft of his Response [20]—he included brackets to show alterations, but he "inadvertently took the altered but unbracketed *Mansky* quote from the outline" he drafted and "included it in Plaintiff's Response [20]." Resp. [27] at 6; *see also* Dkt. [27-5] (Revision Chronology). And he has thoroughly detailed the

measures he took to verify the information. *See* Resp. [27] at 6-7.  Mr. Rice once again acknowledged and took responsibility for his errors.  *See id.* at 7.

## II.  DISCUSSION

Federal Rule of Civil Procedure 11 governs all pleadings, motions, and other papers submitted to the Court.  *See* Fed. R. Civ. P. 11(a); *Thomas v. Capital Sec. Servs., Inc.,* 836, 870 (5th Cir. 1988).  It provides in relevant part:

> (b) Representations to the Court.  By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> . . .
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b)(2).

Simply put, all attorneys are obligated to review and verify the information contained in their briefs and the cases cited before they submit them.  *See Fletcher v. Experian Info. Sols., Inc.*, 168 F.4th 231, 239 (5th Cir. 2026) ("[Counsel] failed to check her own brief before submitting it, leading her to repeatedly misrepresent the law to the court." (citing Fed. R. Civ. P. 11(b) and (c) advisory committee's note to 1993 amendment)); *see also Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024).  And courts in the Fifth Circuit have recognized that attorneys shirk their Rule 11 obligations when they fail to verify the information contained in their briefs, like citing fictitious cases.  *See, e.g., Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 881 (N.D. Miss. 2025) ("[Plaintiff] violated Rule 11 by submitting false citations to the Court[.]"); *Fletcher*, 168 F.4th at 239.

Although Mr. Rice is "not certain [the fictitious case] came from the AI preview," on his web searches, Resp. [27] at 4, the case does not exist, and in the Court's view it is hard to see what else would have generated the fake case. And in any event, when Mr. Rice filed his brief containing a non-existent case—regardless of its source—he violated Rule 11. As for the misquotations to *Mansky*, the Court is satisfied that those errors were the result of a lack of attention to detail. *See* Resp. [27] at 5-7. On this record, the Court must determine the "least severe sanction adequate to serve the purpose[s]" of Rule 11, "deterrence, punishment, and compensation." *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 878, 879 (5th Cir. 1988).

The Court finds that, under the circumstances, a judicial admonishment is a sufficient remedy for Mr. Rice's conduct. *See id.* at 878 ("[A]s a less severe alternative to monetary sanctions, district courts may choose to admonish or reprimand attorneys who violate Rule 11."). It appears that Mr. Rice has taken responsibility for his actions, that he recognizes the severity of his conduct, and that he acknowledges the risk posed to the rule of law by fake cases. *See* Resp. [27] at 5. Mr. Rice has been apologetic, *see id.,* and he has related the efforts made to ensure this does not happen again, *see id.* at 7. Specifically, American Dream Legal has implemented a "policy requiring attorney training for any future changes to legal research providers and a policy prohibiting the use of AI, including search engines with integrated AI features, for legal research." *Id.* And American Dream Legal has procured a LexisNexis subscription and scheduled training. *See id.*

Without minimizing the seriousness of the violations here, the Court is satisfied that given their limited nature, Mr. Rice's apparent ownership of the mistakes, and the changes implemented to prevent future violations, no further action is needed in this case other than to admonish Mr. Rice once again regarding his obligations under Rule 11.

### III.  CONCLUSION

"Trials are a search for the truth.  Parties who cite false cases not only seek to secure unfair advantage, they are, in fact, avatars of a post-truth world." *Ferris*, 778 F. Supp. 3d at 881.  Citing fictitious cases poses a grave risk to the rule of law and the proper administration of justice.  In the age of artificial intelligence, all attorneys must remember their obligations under Rule 11.  Finally, although the Court finds that no additional action is warranted in this case, Mr. Rice is **ADMONISHED** and **WARNED** that future conduct of this kind will result in sanctions.

**SO ORDERED**, this the 22nd day of May, 2026.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE

6